Good afternoon and welcome to the Ninth Circuit. Welcome virtually. I'm sorry we can't do this in person, but virtually is better than not at all. The first case on our calendar this morning is United States v. Roberts. First off, can both of you hear me? Raise your hand if you can hear me. Away we go. When you're ready, Counsel. Good afternoon, Your Honors. May it please the Court, my name is Carmen Smarandollo and I represent Mr. Shaun Roberts. I would like to reserve two minutes and I will keep an eye on the clock. Mr. Roberts' case presents a straightforward application of this Court's decision in United States v. Arruda, and also a straightforward question of statutory construction. And unless Your Honors have a preference, I would like to start with the statutory construction question. Your Honors, in the Compassion Relief Statute, Congress made a conscious choice not to enumerate any kind of specific circumstances that qualify as extraordinary and compelling reasons, but to choose a general standard. That standard is flexible, yet demanding, but it is expressed in general terms. And why does it matter, Your Honors? It matters because general terms have to be given their general meaning. And as the Supreme Court reminded us in the Bassett decision in 2020, when Congress uses general terms, it means that it wants to give those terms general coverage. And it is not an invitation for courts to create ad hoc exceptions. And I respectfully submit, Your Honor, that's exactly what the government would like you to do. To create an ad hoc exception to this standard, based on what the government thinks, the government intent must have been when it did not make the sections 401 and 403 retroactive to people who were sentenced before the passage of the First Step Act. We know by now, I think it's black letter law, that Congress's intent must be expressed in the words it enacts, in the words it chooses for its laws. And in this particular case, Congress, nowhere in the 3582 statute, the 28 USC 994T statute, in sections 401 or 403, has chosen to exclude non-retroactive sentencing amendments from that standard. We know very well that Congress knows how to do that. Because in 994T, it actually created such an exception. It is the exception for rehabilitation alone. And based on that exception, we draw several inferences to the extent that we need to. First, under the express unions, the fact that Congress only enacted one exception means that no other exceptions exist. Second, Congress, in mind, does not know how to enact exceptions. Yet in 2018, when it passed the First Step Act, Congress did not alter, did not modify the exception and comparing reasons standard. And this is important, Your Honor, because it's the same act in which Congress adopted section 401 and 403. So if you're right, why did they not make it retroactive? I mean, it seems, do you think they just didn't understand the effect of 3582? Or, I mean, why, what do you think they were doing? How do we reconcile them? I think, Your Honor, is that, and of course, all of us could only speculate about what exactly went through the minds of so many people. But I submit to you that no reasonable lawyer, and there are plenty in Congress and plenty advising Congress, would have… You don't need to make a bolder claim than you need for your argument, but… I respectfully suggest to you that Congress did not make the statute automatically retroactive to everybody, because it knew that now there is a mechanism available to defendants to use to obtain relief on this basis on a case-by-case consideration. It didn't see the need for that. But more important, Your Honor, even if Congress did not engage in a very extensive discussion about the pros and cons of these two approaches, what's important is that Congress did not move, did not intend, and did not remove those non-retroactive sentencing amendments from the standard. And that's the statute that we have to deal with today. Regardless of what Congress's intent might have been, it did not get expression in a new exception. Congress decided to maintain the same standard that it adopted in 1984. And the same standard has allowed, for all this time, any cases where extraordinary and compelling reasons exist. So what exactly did the district judge do wrong? Well, Your Honor, the district court in this case engaged in the dangerousness analysis under 1B113, subsection 2, which in turn references 18 U.S.C. 3142G, and denied Mr. Roberts' motion categorically, because in the district court's decision, he could not demonstrate that he does not present a danger to the community under that standard. Well, doesn't our opinion in ARRUDA take care of that? Exactly, Your Honor. I fully agree. And that's why I think that this is a straightforward application of ARRUDA. But other than, I mean, so I acknowledge that the court discussed 3142 and it shouldn't have, and I don't believe it cited 3553, which it should have. But aside from that, in terms of the substance of its decision, what factors do you think it considered that it should not have, that it was not allowed to, and what factors do you think it must have considered that it failed to? The district court considered two impermissible factors that come from 3142G. It considered the weight of the evidence against Mr. Roberts' trial, and it also considered the fact that under 3142G, it qualifies as a crime of violence. Those are impermissible factors. Why? I mean, I thought the point of ARRUDA was that the district court has very broad discretion to look at all the circumstances of the offender and of the offense. Why is it not allowed to take those things into account? Because those factors, Your Honors, are not part of the 3553A factors, are only part of the 3142G factors. And in turn, they are part of the Sentencing Commission's policy, which is not applicable to a motion like the one brought by Mr. Roberts. But 3553 includes protecting the public from further crimes by the defendant, reflecting the seriousness of the offense. It seems like the things that the district court was talking about fall under those headings, don't they? I disagree, Your Honors. I don't see how the weight of the evidence of trial has any bearing on any of those 3553A factors. After all, we expect all defendants who are convicted to be convicted beyond a reasonable doubt. We don't expect to just put people in categories such as crime or violence and not actually look into the totality of the 3553A factors. And what's important, Your Honor, is to remember that in the compassion release context, that 3553A analysis needs to be an updated one. It cannot be just, well, I gave you a sentence 15 years ago, and I thought that was the right sentence. It needs to be updated because otherwise the statute is a nullity. And that's what Chief Judge Gregory said in his concurring opinion in Kibbutz. But the court didn't. May I ask, as I read the decision, maybe you can point me to where the court said, you know, I'm just relying on what happened 15 years ago. Because on the last page of the carryover from 8 to 9, the court describes what it had found at the initial sentencing and then says, and its views, referring to the court, its views on these factors have not changed. So it's not that it's just sticking with what it found before it. It found it's finding that what it found before continues to be true. So so where where did it say it wasn't going to do an updated look? What the court actually said is that I looked based on his Mr. Roberts's criminal history. I determined initially that an upward variance was warranted. And my views, the court's views on these factors have not changed. The mere fact that the district court believed that an upward variance was warranted initially or now is not the kind of 3553 analysis that confessional release requires. And that is because especially in a case like this one, the the question about upward variance is various from what? Because the guidelines on which the district court relied 15 years ago necessarily included the dramatically higher statutory mandatory minimums that the first step act changed. And I see that I'm already in the in the red zone. No, it's it's it's on us that we're taking you over time. Let me ask you another question, if I may. I had trouble understanding the district court's order in the following sense. The district judge gave us one of the reasons for denying the motion was that, well, even if I were to reduce the sentence, it would not result in your release. Am I supposed to infer from that that the district judge thought that the motion has to be granted with resulting release? And that was the only option, which would have meant that the sentence would have been drastically reduced. Was there a misunderstanding of the judge in terms of what he was allowed to do? I should start with the fact that in the in this case, the district court did not hold a hearing. So the court only had at its disposal the parties briefings. So nobody had the chance really to talk through. Well, what about my concerns that he if he gets out, it is too early and there was no opportunity to say your honors. But there is all these other opportunities, other options for you. So I do believe on this record and based on how the order is written, that the district court believe that this is this positive consideration. That the fact that in his in the district court's opinion, too little time. Or too much time is left to serve is the kind of prohibitive consideration that that means that he needs to deny the motion. And I if I understand your honors concerns, I fully, fully agree that the statute on its face allows for a partial reduction, a reduction, not necessarily resulting in immediate release. And I think that's also a very, very important part of the way a district court should exercise its 35, 53, a discretion in a compassionate release case. OK, thank you. And so that's your honors. Yeah. Let's hear from the other side and we'll make sure you get a chance to respond. Ms. Walker. Good afternoon. A police the court. My name is Kelly Volcar and I'm here on behalf of the United States. This court should affirm because the district court did not abuse its discretion in denying Roberts 18 U.S.C. section 3582 C1 a motion, also known as a compassionate release motion release motion for three individualized reasons. First, the district court determined that defendants still presents a danger to the community and noted its prior upward variance as the time of sentencing and stated that its views currently of those factors had not changed. Second, the district court to your honors. Minimums did not drive Robert's original sentence. Reverse order of the questions you were asking my colleague, which is why the district court did what it did here. I first want to understand that in light of our decision in Aruda. Where I thought we said that the. The dangerousness finding is not required in the district court here decided that it was and then never reached anything else. So don't we have to send it back under Aruda? Your Honor, I respectfully disagree. I believe in Aruda. It said that the dangerousness finding under 31.2 G is not required. However, Aruda also said that the policy statement may inform the district courts of discretion and the government's position is that's exactly what happened here. So, while the district court decided this decision before Aruda came out, it's still in compliance with Aruda because it both found that it was not bound by the policy statement on the extraordinary compelling prong. And when it came to the dangerousness prong, it reviewed factors that significantly overlapped with the three, five, five, three, eight factors, which every judge Miller had also mentioned. And because the district court's decision was informed by the statute and largely driven by the fact that he found he was a danger, but also other considerations. I would argue that the district court was not considering itself bound by 31.42 G. It only found that those factors were dispositive in this case. And I think what really helps contrast that is the courts, the same district court decided just a few months earlier, a different case called the Chan case, where it reached a different conclusion. And in that case, it didn't find itself found to follow the 31.42 G factors. So that's why I think that Aruda does not resolve the issue here. Well, would you agree that if the district court relied exclusively on the dangerousness finding in order to deny a reduction, that that would be error? Very close, Your Honor. I have seen decisions where a district court has said pre-Aruda that 31.42 G, they find dangerousness. And even though they think there are medical considerations and other three, five, five, three, eight factors that would balance against that, they felt their hands were tied. They felt bound and they felt that they had to stop at 31.42 G. I think that that's a clear example of that would be legal error after Aruda. District court did that here. And you read this as, in this case, you read the district court's decision as not doing that. Correct, Your Honor. I read the district court's decision in this case as, in a lot of ways, considering the brutality of the circumstances. In fact, another point that my colleague made in his response to one of Your Honor's questions was whether or not the district court just kept the same view it had from 15 years ago. On ER-8, the district court actually said it considered the record of programs that Roberts has completed while incarcerated and notes that he had done some rehabilitation while in prison. The court merely also looked at the other facts, remembered this defendant from when he had sentenced him 15 years ago, and said that in this case, in his distress, the district court's discretion, its views had not changed. And the district court, the defendant did not warrant a sentence reduction in this case. It certainly seems to me that the district judge could have ruled exactly as he did had the district judge applied the 3553 factors instead of the 3142 criteria. And the district judge could have done it even if he had understood that granting the motion did not necessarily result in release. But what I'm concerned about is that the 3553 factors are somewhat different, even though they have, in my view, certainly allowed the district judge to consider dangerousness. But I'm also concerned that the judge thought that, well, if I grant the motion, that means I've got to let him out right now, which I can understand the district judge not wanting to do that given the length of the sentence. So why shouldn't we send it back saying, no, this does not necessarily mean his immediate release. It could mean a reduction in the length of the sentence. And the factors are 3553. And you may be able to come to exactly the same conclusion you did, but we would prefer that you do it under the right factors. Your Honor, I think that's where the harmlessness analysis comes in. I do think that the district court did not explicitly or did not explicitly go through the 3553 factors, nor did it reference them. It clearly was following the 3142 factors. However, there was an overlap, which does not seem to indicate the court would come to a different decision. And then there's no if you would hear whether the judge would come to a different decision because it said I determined at the time of sentencing an upward variance, a significant upward variance over and above. I'm not sure there is no ambiguity. And harmless error analysis is always an odd thing to do. It's what would the jury have done had it known this? And then we make a guess because the jury is gone. In this case, of course, we don't have to make a guess. We can ask the judge, would you have come to the same conclusion? What's the harm in asking the judge, would you come to the same conclusion or a different one if you apply the appropriate analysis? Your Honor, I think it's just a matter of judicial resources. And of course, your honors are free to do that. I just do not think it's necessary in this case where the district court is as clear as it could be that it had. It remembers why I gave an upward variance in that sentencing when it did walk through the 3553 factors and its view on those factors have not changed. And I think that the district court's sentence in his order, that that is the main thing driving his conclusion in denying the compassionate release, does provide this court with a clear answer of what it would have done if it went through the 3553A factors rather than the 3142G factors. And I know also that in the court's recent case in Keller, this court found the district court improperly skipped the exhaustion step, but then denied the claim on the merits. And this court found the district court skipping of that merit step. What I'm about to say is analogous and not perfectly so, but we routinely send back to a district judge if it turns out that the guideline calculation was incorrect. Even though the judge is not bound by the guideline calculation, even though the judge carefully went through all of the 3553 factors, we say, well, it's possible that had you understood that the guideline range was different, you might have come to a different decision. I view this as this case is somewhat analogous to that, that the judge, I think, would be perfectly within his acting within his discretion were he to come to the same conclusion. But the framework of the analysis is going to be different. Your Honor, I would just respond that I think the district court here has done that in both. If you look back at the original sentence and transcript, he went factor by factor through 3553A. And again, although he didn't explicitly reference 3553A in this order, he did say, I recall when I sentenced this person 15 years ago and what drove that upward variance, which was the 3553A factors. And my view of those factors have not changed. So I do think that the district court here told us what his view of the 3553A factors were. And, of course, this court has held many times that a district court need not take off every factor in reaching its decision. I did want to I see my time is low and I wanted to briefly address this court need not reach the first question that my colleague started on with the statutory construction. But if you were to do so, I would note that my colleague is taking a very broad view of what the statute allows for extraordinary compelling reasons, but a very narrow view of what a court can consider under 3553A. And when Congress enacted Section 403, it made it non-retroactive. And at the time, compassionate release motions were being governed by the policy statement USSG 1B 1.13. And I think I can't get into the minds of Congress, but it would be tough to say that they saw the situation we're in now where three years later, the Sentencing Commission hasn't had a quorum and hasn't been able to update those policy guidance. So I just wanted to say on that point that my colleague uses the statute is very broad. We view it as much narrower. And also when Congress enacted the First Step Act changes, the policy statement was still in place and governing these motions, these compassionate release motions. Okay, thank you. Ms. Gates, would you put two minutes on the clock? We took you over time. So let's put two minutes back on the clock for response if you have you have one. Thank you so much, Your Honor. I would like to start with Keller. In Keller, this court said that to deny a motion, a compassionate release motion, the district court may address either the exceptionally compelling reason standard or the 3553A analysis. In this case, the district court did neither. And that is reason to send this case back. You also must send it back for another reason. The government cannot demonstrate, cannot meet its burden under the harmlessness error standard. That keeping in mind the fact that district courts have the authority to grant a partial reduction, that no reduction whatsoever might happen to Mr. Roberts. I also strongly disagree that the district court on remand might use the 3142G factors as a guide. That is impermissible. That is against Congress's intent. And we know that because in the other subsection of the compassionate release statute, Congress actually made that a statutory requirement. There is no such statutory requirement in the compassion release statute subsection that applies to Mr. Roberts. And I would point out that Congress itself only delegated to the commission the authority to describe the exceptional and compelling reason circumstances, not to add statutory requirements. And finally, Your Honors, about my colleague's argument that Congress could not have anticipated the argument that nonretroactive sentencing amendments be part of the exceptional and compelling reasons because they had the policy statement as some guide. Since 2007, that policy statement has included the catch-all provision in subdivision D, which clearly says that courts may grant compassion release when other reasons than the ones expressly enumerated rise to that level. That is important, Your Honors, because this is a general standard and it's a demanding one. The fact that courts may consider other circumstances does not excuse them from actually finding that those circumstances are extraordinary and are also compelling. And finally, that they would also have to consider the 35 PC3A factors. And with that, I really want to appreciate for allowing me to go so much over my time, and I respectfully request that you reverse and remand. Thank you. Okay, thank both of you for very helpful arguments. The case just argued is submitted.
judges: SCHROEDER, FLETCHER, MILLER